Sarah R. Flanigan, Respondent, *v.* Henry W. Cohu et al., Copartners, Doing Business as Cohu & Co., et al., Appellants.

Fourth Department, November 14, 1956.

*John P. Doyle* for Henry W. Cohu and others, copartners, doing business as Cohu & Co., appellants.

*MacNeil Mitchell* for Edward T. Wiley, appellant.

*James M. Ryan* for respondent.

Bastow, J.  The appellants, copartners doing business as Cohu & Co., seek a reversal of a judgment obtained against them by the plaintiff.  The recovery was based upon the activities of the defendant, Wiley, during the years 1949 to 1952.  The appellants by their failure to respond to a demand to admit to certain facts conceded, among other things, that during the years in question Wiley was in their employ; that he acted as their agent with an office in the city of Auburn; that he bought and sold securities for customers of appellants and that he was authorized to receive on their behalf moneys from their customers with which to purchase securities for such customers.

The complaint contained two causes of action.  The second was dismissed at the close of plaintiff's case and may be ignored in deciding whether plaintiff's recovery can be sustained.  The labeled first cause of action upon examination is found to contain two separate and distinct causes.  The heretofore stated admitted facts were alleged and it is then set forth that plaintiff in reliance on the position of the agent, Wiley, delivered to him during the period of four years sums totaling $18,086.15 " upon the express understanding and agreement that [the agent] should purchase for the plaintiff securities in corporations having securities sold and listed, or about to have such securities sold and listed, on the New York Stock Exchange " and that the agent received the said sum and agreed to purchase such

securities for the plaintiff. It is further alleged that the agent, disregarding his duty to plaintiff, failed and neglected to make such purchases and wrongfully converted the money to his own use or the use of the partnership.

The same cause of action further alleges that the agent was held out to the plaintiff and the public by appellants as a person having authority to transact business for them and that in reliance thereon plaintiff delivered the sums of money to the agent for the purpose of buying securities and making investments for the plaintiff. There do not follow any suitable allegations that the agent or the appellants failed and neglected to buy securities or make investments for the plaintiff although there is an allegation of demand for the return of the money. The complaint, however, has not been attacked by appellants and the case was tried and submitted to the jury on this phase of the case without objection. Therefore, we treat the complaint as adequate in the light of the conclusion we have reached as to the disposition of the appeal. Whether amendment of the pleading is necessary or desirable we are not required to pass on at this time.

Thus, it appears that plaintiff sought to recover first upon the breach of an express agreement that appellants' agent should purchase for her corporate securities sold and listed or about to be sold and listed on the New York Stock Exchange. The other basis for a claimed recovery was substantially one for money had and received by appellants' agent for the purpose of buying securities and making investments for plaintiff. The case was submitted to the jury upon these two claimed grounds for recovery.

Upon the trial proof was submitted to substantiate a finding that on nine occasions during the period from 1949 to 1952 the plaintiff delivered to the agent sums of money in cash or by check totaling $18,086.15. As to five of these transactions Wiley received from plaintiff a total amount of $4,586.15 upon the express promise to buy securities for plaintiff. This he failed to do and neither he nor the appellants accounted therefor or returned it upon demand. There was adequate proof to sustain the verdict of the jury as to these items. Three of the four remaining amounts consisting of $800 given to Wiley on July 1, 1949, $700 on June 20, 1950 and $2,000 on February 21, 1952 present a closer question of fact but upon a review of the entire record we conclude that the verdict of the jury was not against the weight of the credible evidence. Recovery of the total amount ($8,086.15) of these eight transactions may only be sustained, however. upon the portion of the complaint alleging

a cause of action for money had and received. Here there was proof that Wiley, the agent of appellants, received the various sums and plaintiff never received any securities therefor. Moreover, there was uncontradicted evidence that Wiley either converted the money or used it in his personal ventures.

A more troublesome problem is presented as to the remaining transaction of November 20, 1951. There was proof that the plaintiff borrowed $10,000 from a bank and placed a mortgage on her home. The check from the loaning bank for this amount payable to the plaintiff was indorsed by her as payable to the order of Blaze-Master, Inc. The check was delivered to Wiley and subsequently plaintiff received a certificate dated November 21, 1951 for 1,000 shares of class A stock of Blaze-Master, Inc. There was evidence that this was a corporation formed by Wiley and others. Wiley was an officer of the corporation. There was further proof of admissions made by Wiley that he told plaintiff that this was a good investment and that he advised her to purchase the stock although Wiley subsequently admitted that at the time of the sale the company was in financial difficulties if not insolvent. There was documentary evidence that Blaze-Master had an account in a bank in Auburn and this account during the period from November 13, 1951 until it was closed in July, 1953 was consistently over-drawn in amounts ranging from $32.54 on April 2, 1952 to $11,037.45 on October 21, 1952.

It is apparent from these facts that this transaction does not fall in the pattern of the other eight where plaintiff received nothing except promises from Wiley in exchange for her money. Here Wiley represented that the investment was a good one and induced plaintiff to invest $10,000 for which she received a certificate for 1,000 shares. There is insufficient proof upon which to sustain a recovery upon the theory that the money was received by appellants' agent to purchase securities and a failure to do so. Plaintiff's proof is to the contrary. If recovery is to be had we must look to the other cause of action in which there was alleged an agreement that Wiley would purchase for her corporate securities sold and listed or about to be sold and listed on the Stock Exchange. There is testimony that Wiley represented to plaintiff that Blaze-Master was listed on the "Big Board". It is further admitted by appellants by their failure to answer the demand to admit certain facts that Blaze-Master stock was not listed on the Exchange during the years 1949 to 1952. We search the record in vain, however, for any proof of an agreement as alleged in the complaint relating to the purchase of securities sold and listed or about to be sold

and listed on the Stock Exchange. The subject is not touched upon in the testimony or documentary evidence. The case was submitted to the jury to decide whether such an agreement was made and if so recovery could be had upon a further finding of breach thereof by Wiley. We conclude that absent any proof of such an agreement this phase of the case was improperly submitted to the jury and the resulting verdict as to the amount of $10,000 was contrary to the evidence and requires a new trial.

It is recognized that upon the trial appellants did not object to the submission of the case to the jury upon the theory that an agreement was made by which plaintiff's moneys were to be invested only in securities sold and listed or about to be sold and listed on the Stock Exchange. Their rights were preserved, however, by adequate motions at the close of the evidence although in making these motions appellants did not direct the court's attention to the complete failure of proof on this phase of the case. The motion made by appellants for a directed verdict, however, presented to the trial court the question as to whether the jury by any rational process could base a finding in favor of the plaintiff upon the evidence presented. (*Blum* v. *Fresh Grown Preserve Corp.*, 292 N. Y. 241, 245; *Wearever Upholstery & Furniture Corp.* v. *Home Ins. Co.*, 286 App. Div. 93, 95.) Implementing this rule a directed verdict would have been required as to plaintiff's claim to recover on the $10,000 transaction.

We are unable, of course, to anticipate what proof may be offered upon a new trial. Attention should be directed, however, to the point that in the present state of the record it is impossible to make proper allocation of the restitution made by the defendant, Wiley. The court's charge in substance directed the jury to grant a credit of $5,478.86 against the total amount claimed of $18,086.15. The jury did so and returned a verdict for $12,607.29. It appears that during a period of time Wiley undertook to make payments of principal and interest totaling $850 upon the mortgage the plaintiff had placed upon her home to raise the $10,000 to invest in the Blaze-Master stock. In connection with other proceedings against Wiley the plaintiff had received from the probation officer of Ontario County the sum of $4,628.86 " to apply on the account of (her) money expended for investments " with appellants and Wiley. Clearly the $850 payment relates to the transaction that we have determined the plaintiff may not recover upon in the present state of the proof. It is impossible to ascertain upon which particular transactions the balance of the restitution was made. Further exploration of this subject may be required on the next trial.

466

Lastly, we note that a substantial amount of testimony was received from plaintiff and one of her witnesses concerning statements made by Wiley as to the nature and extent of his authority to bind the appellants. This was received over the objections of appellants and subject to a motion to strike. At the close of plaintiff's case and in the absence of the jury appellants' motions to strike this testimony were granted. It does not appear, however, that the jury was informed of these rulings or given adequate instructions by marshalling the evidence so that they could properly determine the factual issue presented.

The judgment and order appealed from should be reversed, on the law and the facts, and a new trial granted to the appellants, with costs to abide the event.

All concur. Present — McCurn, P. J., Vaughan, Wheeler, Williams and Bastow, JJ.

Judgment and order reversed, on the law and facts, and a new trial granted, with costs to the appellants to abide the event.