Hugh R. Elwyn, J.
The petitioner husband and the respondent wife obtained an Alabama divorce decree which confirmed a separation agreement between the parties, but provided that the agreement was not merged in the decree but should in all respects survive the decree. The separation agreement provided for support payments for a minor daughter of $10 per week, gave custody of the child to the wife and accorded the husband certain specified visitation privileges.
The husband, claiming that the wife had wrongfully failed and refused to permit him to visit his daughter as he was entitled *943 to do by the terms of their separation agreement brought this proceeding to enforce the custodial provisions of the Alabama decree which had incorporated and confirmed the separation agreement from which his visitation rights arose. Although the respondent raised no question as to the jurisdiction of the Family Court to entertain the application, this court held that in the absence of a referral from the Supreme Court the Family Court had no jurisdiction to entertain an application to enforce, as distinguished from an application to modify on the ground of changed circumstances (Family Ct. Act, § 468), the custodial provisions of an out-of-State divorce decree and pursuant to the provisions of the New York Constitution (art. VI, § 19, subd. e) transferred the matter to the Supreme Court. (Matter of Abreu v. Abreu, 45 Misc 2d 952.)
The Supreme Court acting pursuant to the provisions of section 652 of the Family Court Act has now referred the application to this court and counsel for both parties have stipulated that all testimony heretofore taken before this court prior to the transfer of the application to the Supreme Court may be considered by this court in making its determination. The provisions of CPLE 2001, entitled “ Mistakes, omissions, defects and irregularities ” and providing that “At any stage of an action, the court may permit a mistake, omission, defect or irregularity to be corrected, upon such terms as may be just, or, if a substantial right of a party is not prejudiced, the mistake, omission, defect or irregularity shall be disregarded ’ ’ is applicable to this situation (Family Ct. Act, § 165).
There remains, however, a troublesome question of jurisdiction, for nowhere in the Family Court Act is there statutory authority to entertain an application to enforce, as distinguished from an application to modify,[1] the custodial arrangements of an out-of-State judgment fixing custody made in an action for divorce, separation, or annulment.
The omission of statutory authority to entertain an application to enforce the custodial provisions of an out-of-State matrimonial judgment or decree may be accounted for by the fact that “ The full faith and credit clause does not apply to custodial decrees” (Matter of Bachman v. Mejias, 1 N Y 2d 575, 580; Matter of Hicks v. Bridges, 2 A D 2d 335; May v. Anderson, 345 *944 IT. S. 528). New York is, therefore, not required to recognize or accept as binding upon it the custody provisions of the Alabama divorce decree and this court has power to modify the custodial provisions of the out-of-State judgment on a showing of change of circumstances subsequent to the entry of the judgment. (Family Ct. Act, § 468.)
If this court is not required to recognize the custody provisions of the parties ’ Alabama divorce decree, may it do so as a matter of comity? The answer to this question may be found in Mr. Justice Frankfurter’s concurring opinion in May v. Anderson {supra, pp. 535-536) where in commenting upon the court’s opinion which he apparently found somewhat fuzzy he said: ‘ ‘ What is decided —■ the only thing the Court decides •— is that the Full Faith and Credit Clause does not require Ohio, in disposing of the custody of children in Ohio, to accept, in the circumstances before us, the disposition made by Wisconsin. The Ohio Supreme Court felt itself so bound. This Court does not decide that Ohio would be precluded from recognizing, as a matter of local law, the disposition made by the Wisconsin court. For Ohio to give respect to the Wisconsin decree would not offend the Due Process Clause. Ohio is no more precluded from doing so than a court in Ontario or Manitoba would be, were the mother to bring the children into one of these provinces ’ ’.
In Matter of Lang v. Lang (9 A D 2d 401, 406-407) a case in which the court felt that comity required it to give effect to the decree of the Swiss courts which had domiciliary jurisdiction over two Swiss children, the court recognized that ‘ ‘ it has been expressly held that the full and credit clause in the Federal Constitution does not apply to custody decrees and that the responsibility of the New York courts as parens patria transcends the rule of comity” {Matter of Bachman v. Mejias, supra). The rule is the same in most other jurisdictions (Ann., Custody of Child-Jurisdiction, 4 ADR 2d 7 et seq.).[2]
“ But ”, the court goes on to say, “ the existence of power in the court to ignore the Swiss decree and depart from principles of comity does not mean that the power should be exercised in the absence of extraordinary circumstances demonstrating that otherwise the children will suffer (Finlay v. Finlay, 240 N. Y. 429; Wicks v. Cox, 146 Tex. 489; see Matter of Sutera v. Sutera, 1 AD 2d 356; cf. Arpels v. Arpels, 9 AD 2d 336). * * * And *945 the crux of the matter here is that only by withholding the power may the interests of the children be served.
“ Certainly, neither the Bachman nor the Hicks cases (supra) are authority to the contrary. ’ ’
Thus it appears that while this court is not required by the full faith and credit clause to accept as binding upon it the custodial provisions of the Alabama decree, it may nevertheless on principles of comity recognize and give effect to the Alabama decree if it finds that the best interests and the welfare of the child coincide with the disposition already made. The case for recognition on principles of comity may be more compelling where the foreign court had domiciliary jurisdiction of the children as in Lang (supra), but even where the child always was a domicilary of this State, as it is in this case, there is no constitutional reason why this court cannot give effect to the foreign decree disposing of the custody of a child domiciled in the State if this court concludes that the best interests and welfare of the child, which is always the primary consideration, require it.
In Sager v. Sager (21 A D 2d 183) the parties had obtained an Alabama divorce, which decree confirmed and ratified an agreement between the parties which provided that the husband was to have custody of their two children with “ reasonable rights of visitation ” to the wife. The wife commenced an action in the Supreme Court by the service of a complaint alleging that the husband had violated the terms of the separation agreement by refusing to allow her visitation rights and praying, inter alia that the custody of the children be decreed to her. It was contended by the appellant that neither the Supreme Court, nor the Family Court to which the case was referred for determination had jurisdiction of the subject matter. Distinguishing Finlay v. Finlay (240 N. Y. 429) relied upon by the appellant and citing Matter of Bachman v. Mejias (1 N Y 2d 575) the court said (p. 185): “ In the present circumstances, the Supreme Court, in our opinion, had jurisdiction.” Rejecting the appellant’s contention that the Supreme Court did not have authority to transfer and refer the action to the Family Court for determination, the court said (p. 186): “ section 652 provides jurisdiction to determine custody in matrimonial actions upon referral from the Supreme Court. There is no specific provision in any of these implementing sections with reference to petitions in equity when not directly associated with matrimonial actions. The section would appear to be intended to grant jurisdiction in circumstances, such as here, where custody has been previously determined in a separation agreement and thereafter ratified in a foreign divorce *946 decree. If such were not the intent of the Legislature, such limitation should be spelled out in subsequent legislation.”
Even in the absence' of specific implementing legislation referring to a foreign matrimonial judgment which has confirmed and ratified a separation agreement disposing of the custody of children, the Appellate Division found in article VI (§ 13, subd. c)[3] of the New York Constitution sufficient warrant for the Family Court’s assumption of jurisdiction in circumstances such as presented by Sager v. Sager (supra).
The only discernible difference between the Sager case and the present case is in the type and extent of the relief sought' — in the Sager case the parent with visitation rights sought full custody, whereas the petitioner here seeks only to have this court confirm and aid him in securing the full enjoyment of his visitation rights. If the Family Court has jurisdiction, when the matter has been referred to it by the Supreme Court to grant relief to a parent accorded visitation rights by a foreign divorce decree which had confirmed a separation agreement and who seeks full custody because those visitation rights have allegedly been violated (Sager v. Sager, supra) then the Family Court ought also to have jurisdiction, when the matter is referred to it by the Supreme Court, to aid the noncustodial parent to secure the lesser privilege of the full enjoyment of his visitation rights when those rights are claimed to have been violated, provided of course, that their exercise is found to be consistent with the best interests of the child. If the court has jurisdiction to grant relief, it may grant any type of relief within its jurisdiction appropriate to the proof, whether or not demanded and even though the pleader has asked for relief to which he is not entitled (CPLR 3017, subd. [a]; 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3017.02). On the authority of Sager v. Sager (supra) this court will assume jurisdiction of this application and grant such relief as is appropriate to the proof.
By the terms of the separation agreement entered into between the parties on June 29,1961 the petitioner agreed to pay for the *947 maintenance, support and education of the child, Debra Abren, the sum of $10 per week. The wife was to have the custody of the child, but the husband was to have the right to visit the child on any two Sundays per month between the hours of 12:00 noon and 6:00 p.m. When the child reached six years of age more extensive visitation rights were accorded to him.
The respondent resists this application of her former husband to be allowed to visit his daughter upon the ground that at the outset his support payments were irregular and that no support payments have been made since June 26, 1962. The petitioner, on the other hand, justifies his failure to make continued support payments on the ground that his wife wrongfully and unjustifiably refused to permit him to visit his daughter.
The proof shows that from June 29,1961, until June 26, 1962, the petitioner paid a total of $510 for the support of his daughter. No payments have been made since June 26, 1962. No support payments were made by the petitioner from June 29, 1961 until Octpber 3, 1961 when he sent the petitioner a check for $140 together with a letter stating that the check would bring him up to date and promising to send Debra’s check every week on Friday. The letter postmarked October 3, 1961 was refused by the respondent and returned by post office to sender. On October 13, 1961 the petitioner’s attorney wrote to the respondent’s attorney enclosing a bank check for $140 for the support payments, which was accepted.
Thereafter, from time to time, the last time being on May 29, 1962, the petitioner wrote letters to his former wife asking her permission to let him see Ms daughter, but his letters were refused and those that were accepted were never answered. The respondent admitted that she had given instructions to the post office that she would not accept any letters addressed to her by her former husband. Sometime during the Winter of 1961. the petitioner made an effort to visit his daughter by making a trip from New York City and calling at his wife’s residence at Mount Marion, New York, but finding no one at home his visit was fruitless. All attempts to communicate with his former wife by mail and by personal visits having met with failure either through her refusal to accept his letters or her absence from her home, the petitioner finally abandoned further efforts to see his daughter and also ceased maMng the support payments. Now that he seeks the aid of the court to permit him to visit his daughter, he is met by the defense that in failing to make support payments, as called for by the separation agreement, from June 29,1961 until October, 1961, he breached the agreement and therefore his wife was relieved of her contractual obligation to permit *948 him to visit his daughter. The wife’s attitude, confirmed upon the trial, is evidenced by her refusal to accept any correspondence from her husband including the one containing the belated support payment of $140 on the ground that he had failed to meet his support payments. Moreover, the respondent strenuously urges that inasmuch as the petitioner has made no support payments since June, 1962 he ought not to be permitted to see his daughter unless and until all the accumulated arrears are paid in full.
The case was tried and briefed by counsel as if this were an ordinary contract case and as if the rights of the parties could be resolved if once it were determined who first breached the agreement — the husband by failing to make timely support payments during the period from June 29, 1961 to October 3, 1961, or the wife when the default had been cured by unjustifiably refusing to accord the husband his visitation rights.
In refutation of the wife’s contention that her husband’s failure to make his support payments has relieved her from any obligation to allow him visitation rights and that before he may resume visitation with his daughter the arrears in the support payments should be paid, the petitioner cites Duryea v. Bliven (122 N. Y. 567); Altschuler v. Altschuler (248 App. Div. 768) and Magrill v. Magrill (16 Misc 2d 896) which are authority for the proposition that covenants for support payments and visitation rights in separation agreements are deemed dependent and in an action for support payments brought upon a separation agreement, the defense of the denial of visitation rights may be properly interposed. In Magrill v. Magrill (supra, p. 901) the court said: “ The defendant’s affirmative defense that his former wife breached the separation agreement by her failure and refusal to accord him the rights of visitation of his child as therein provided, if established, would bar the recovery of all unpaid installments of support therein provided, including the amount which was allocated for the maintenance and support of the child. Recovery of installments payable by a husband to his wife for the support of their children has been denied in cases where he has been willfully and unreasonably deprived of his rights of visitation as provided in a separation agreement, upon the ground that the covenants were dependent.” (To the same effect, see Muth v. Wuest, 76 App. Div. 332; Matter of Noel, 173 Misc. 844; Mackay v. Mackay, 205 Misc. 470 ; Richards v. Richards, 5 Misc 2d 46; Webster v. Webster, 14 Misc 2d 64; Garbarino v. Keller, 20 Misc 2d 303; Snelwar v. Snelwar, 26 Misc 2d 967.) From the authority of this line of cases both sides take comfort — the petitioner husband arguing that his wife having *949 unreasonably denied him visitation rights he was relieved of his obligation to make further support payments and that he should not be required therefore to pay the unpaid installments before being allowed to exercise his visitation rights and the respondent wife arguing that because her husband fell in arrears in his support payments from June to October, 1961 and having made no payments since June, 1962 she was relieved of any contractual obligation to permit him to visit his daughter. As the parties and their counsel view this dispute the assessment of liability for breach of the dependent covenants of support and visitation would exonerate the one and fault the other. The court, however, takes a different view of the matter.
In the first place, the dependent covenants of support and visitation contained in the separation agreement, having been incorporated into a foreign judgment are no longer dependent. This result of the incorporation of a separation agreement into a foreign divorce decree was recognized and succinctly stated in Greene v. Greene (31 Misc 2d 1009, 1010) where the court said : ‘ ‘ Covenants for support payments and visitation rights in separation agreements are deemed dependent. (Duryea v. Bliven, 122 N. Y. 567; and, see, Borax v. Borax, 4 N Y 2d 113, 116.) In an action for support payments brought upon a separation agreement, the defense of the denial of visitation rights may be properly interposed. (Buryea v. Bliven, supra: Magrill v. Magrill, 16 Misc 2d 896, 901 [App. Term]; Garbarino v. Keller, 20 Misc 2d 303.) It appears, however, that when the provisions of a separation agreement containing such dependent covenants are incorporated into a judgment, particularly a foreign judgment, as a matter of public policy they cease to be dependent. (Lynde v. Lynde, 162 N. Y. 405, 417, affd. 181 U. S. 183; Sterns v. Stevans, 11 A D 2d 726; Leifer v. Leifer, 2 A D 2d 898; Fox v. Fox, 273 App. Div. 895; Smith v. Smith, 255 App. Div. 652; Altschuler v. Altschuler, 248 App. Div. 768; Vastola v. Vastola, 23 Misc 2d 39; Webster v. Webster, 14 Misc 2d 64; Baumann v. Goldstein, 201 N. Y. S. 2d 575.) ”
It would appear therefore that inasmuch as the covenants for support and visitation have ceased to be dependent by reason of the incorporation of the separation agreement into the Alabama decree that the wife has an adequate legal remedy to collect accrued installments of support by a suit on the Alabama judgment. The judgment being final, it is entitled to be accorded full faith and credit by the courts of the State of New York (U. S. Const., art. IV, § 1; Sistare v. Sistare, 218 U. S. 1) and in such a suit she would probably be entitled to summary judgment (Preston v. Preston, 178 Misc. 81; Toms v. Toms, 188 Misc. *950 451; Van Horn v. Van Horn, 196 App. Div. 472; Goldberg v. Mayer, 243 App. Div. 447, affd. 270 N. Y. 660). Moreover, in such a suit the defense that the wife had violated the Alabama decree in respect to the husband’s visitation rights would not be available to the husband to defeat the right of the child to support by'her father. (Smith v. Smith, 255 App. Div. 652, 657; Altschuler v. Altschuler, 248 App. Div. 768; Fox v. Fox, 273 App. Div. 895; Sterns v. Stevans, 11 A D 2d 726; Leifer v. Leifer, 2 A D 2d 898; Tammy v. Tammy, 205 Misc. 439; Webster v. Webster, 14 Misc 2d 64; Vastola v. Vastola, 23 Misc 2d 39; cf. Harris v. Harris, 8 Misc 2d 198.)
The covenants for support and visitation contained in the foreign divorce decree being independent, the converse of the foregoing proposition ought also to be true; i.e., the failure of the husband to make the support payments required by the decree ought not to deprive him of his right to visit his child. As previously indicated, the wife has her remedy. There seems to be no sound reason why she should be permitted to use the privilege of seeing the child as the leverage to pry from the husband that which she can collect by suit on the judgment.
Moreover, in their zeal to enforce and protect their respective “ rights ” the parties have completely lost sight of their young daughter whose best interests and welfare should be uppermost in their minds. Although this application has taken the form of a proceeding to enforce the petitioner’s visitation rights accorded to him by the separation agreement and confirmed by the Alabama divorce decree, the proceeding is essentially one involving the custody of a minor and the noncustodial parent’s visitation rights. Consequently, the same guiding principles that govern, the court in disposing of the custody of a minor in a habeas corpus proceeding should be applicable here. It may be well to recall, therefore, that in a habeas corpus proceeding the court “ is not determining rights ‘ as between a parent and a child ’ or as between one parent and another” (Finlay v. Finlay, 240 N. Y. 429, 434), but acts solely for the best interests and welfare of the child. (Domestic Relations Law, §§ 70, 240; Finlay v. Finlay, supra, p. 433; People ex rel. Herzog v. Morgan, 287 N. Y. 317; Matter of Bachman v. Mejias, 1 N Y 2d 575; People ex rel. Pritchett v. Pritchett, 1 A D 2d 1009, affd. 2NY 2d 947; Matter of Richman v. Richman, 32 Misc 2d 1090).
There is nothing in this record to indicate that the father’s visitation with his daughter would in any way be incompatible with her best interests and welfare. In the absence of such proof the court is justified in assuming that periodic visits from her father would promote and foster, rather than hinder, the *951 establishment of a normal and harmonious father and daughter relationship and that the establishment of such a relationship is in the child’s best interest. The court being satisfied that the exercise of the petitioner’s visitation rights accorded to him by the Alabama decree is compatible with the child’s best interests, there seems to be no sound reason why this court, although not required to do so, should not in this instance give full faith and credit to the Alabama decree insofar as it confirmed the separation agreement establishing visitation rights for the petitioner with his minor daughter. Accordingly, the court will lend its aid to the petitioner in securing to him the full exercise of the visitation rights accorded to him by the Alabama decree. The petitioner’s application is granted and an order may be entered allowing him visitation rights as fixed in the separation agreement and confirmed in the Alabama decree.

. Section 468 of the Family Court Act provides that “ On a showing to the family court that a change of circumstances subsequent to the entry of an order of judgment by a court of competent jurisdiction not of the state of New York, fixing custody in an action for divorce, separation or annulment, the family court shall proceed to determine an application to modify the custodial arrangement provided in such order or judgment".

. In the United States Supreme Court, the effect of the full faith and credit clause on judicial custody determinations is still an open question (Kovacs v. TSrewar, 356 U. S. 604, 607 and dissenting opinion by Mr. Justice Frankfurter) .

. “ The family court shall also have jurisdiction to determine, with the same powers possessed by the supreme court, the following matters when referred to the family court from the supreme court: habeas corpus proceedings for the determination of the custody of minors; and in actions and proceedings for marital separation, divorce, annulment of marriage and dissolution of marriage, applications to fix temporary or permanent support and custody, or applications to enforce judgments and orders of support and of custody, or applications to modify judgments and orders of support and of custody which ma/y be granted only upon the showing to the family court that there has been a subsequent change of circumstances and that modification is required.” (Emphasis supplied.)